Smith, P. J.
—Motion for a new trial under section 3001 of the Code, made by defendants, impleaded, etc., executors of George L. Marvin, deceased. The object of the action is to obtain a decree dissolving a copartnership alleged to have existed between said George L. Marvin and Le Grand Marvin, the assignor of the plaintiff’s testator, Simon L. Greenwood, and providing for a disposition of the partner *237 ship property and a division of the proceeds thereof. The existence of the copartnership is admitted, but the parties are in controversy as to whether certain real estate described in the complaint was partnership property.
It appears from the printed case that in 1830 Le Grand Marvin became a resident of the city of Buffalo, and three years afterwards was admitted to practice law. In 1838 he formed a partnership with George L. Marvin, his younger brother, for the prosecution of "law and agency business, and business pertaining thereto,” upon equal shares, which continued till March, 1842. As early as 1831 Le Grand received from his parents, Asa Marvin and Sarah L., his wife, a power of attorney to care for their estates, under which he purchased real estate in the city of Buffalo for his father, and managed it until he formed the partnership with George, and thereafter it was managed by the firm, and an account with it was kept upon the firm books under the heading of "A. M’s property.”
On the 22d of March, 1842, Le Grand having become embarrassed in his pecuniary circumstances by reason of indorsing the paper of outside parties to the amount of several thousand dollars, the firm was dissolved, and on the same day a new partnership was formed by Le Grand and George, by an agreement in writing, which provided, among other things, that George was to provide the use of law books and all other articles needed for the use of the firm; Le Grand was to receive for his services his expenses, not exceeding one-half of the net profits of the firm; and George was to be the exclusive owner of the proceeds of the firm’s business till actually expended by Le Grand, and to account to Le Grand for the same. The agreement also provided that when the firm should be dissolved each party might have all suits and business brought into the office by him, and to pay the other party the proper net proceeds thereof as fast as collected, and for that purpose all the books and papers owned by either party and relating thereto directly or indirectly, to be open forever to both parties, and to be explained by either party on the request of the other. In June, 1842, Asa Marvin, "also having become embarrassed by his debts, assigned and transferred all his property to Stephen W. Cadwell, of Syracuse, his son-in-law, for the benefit of his creditors, with preferences.
The creditors first preferred were Abiram Ransford and the said George L. Marvin. The claim of the latter was for legal services rendered by the firm, and which claim was assigned to George by the agreement of the preceding March. Ransford’s claim was for about $300, on certain promissory notes given for labor and lent money, which Asa was particularly desirous of paying. To that end, Le *238 Grand visited Ransford at his residence in Brockford, in July, 1842, and suggested an arrangement, which was entered into and carried out, whereby the real estate and portions of the personal property assigned by Asa, were sold at auction by the assignee and bid in by George, who gave his notes for the sum bid, signed by Asa and Le Grand as sureties, which were turned out by the assignee to Ransford and receipted by him as so much cash. The trial court found that the reason which Le Grand gave for having the title taken in the name of George, was the pecuniary embarrassment of Le Grand above referred to. The land thus acquired by George is in dispute in this action, and is situated partly in Buffalo and partly in Syracuse. The title to most, if not all of the other portions of the land in dispute, which the special term has adjudged to be partnership property, was acquired by George by the foreclosure of mortgages, or taking possession under mortgages, assigned by Asa and purchased by George at the assignee’s sale under the management above stated. From the time of the formation of the first partnership, down to the final dissolution in 1864, hereinafter stated, the firm kept an account with Asa in the name of “Asa Marvin’s property ” up to the time of his assignment to Cadwell, and after that time, in the name of “Asa Marvin’s assets,” or “A. M.’s assets.” They also kept an accoúnt as agents for their mother, in respect to her lands, in the name of “ Sarah L. Marvin’s property,” from 1841 till her death in December, 1863, and after that time, in the name of “Sarah L. Marvin’s estate,” with some minor exceptions.
- The trial judge found, upon satisfactory evidence, that after Asa’s assignment to Cadwell, the expression, “A. M. ’s assets,” was used by Le Grand and George' to describe lands, the title to which was derived from Asa through Cadwell, as above stated, or other property exchanged for lands, the title to which was so derived, and that until the final dissolution in October, 1864, it was never, except in a few instances of no particular significance, used to comprehend any other real property whatsoever, except certain lands known as the Bennett and Benedict land, deeded to Le Grand prior to August 6, 1852.
In 1848, the indebtedness of Le Grand above-mentioned, was satisfied, and in 1851, certain decrees in chancery by which the estate of Asa was incumbered were discharged. On the 6 th of August, 1852, Le Grand and George entered into a third agreement of partnership, which contained the following provisions:
“Article 1. The co-partnership in law heretofore existing between said parties under the name and style of Le Grand and George L. Marvin, shall in future be at the *239 equal benefit and risk of said parties, share and share alike.
Article 2. The real estate and the interest therein of the said parties, whether standing in the name of said Le Grand or George, shall be and are for the equal benefit and interest of said parties, share and share alike, subject to all liabilities.
Article 3. The personal property of said parties is now the equal property of said parties, share and share alike, except as to the claims of said George L. Marvin against Henry Tanner and others, obtained through judgments or claims upon said Tanner, which excepted claims to continue as heretofore.
The trial court found that neither in the account of “A. M.’s assets,” nor any other, so far as the evidence shows, does anything appear on the 6th of August, 1852, or thereafter, which indicates that any change of the relations of the parties to the property included in " A. M.’s assets,” was effected by the agreement of that date. That the entries in said accounts indicate that Le Grand participated with George to some extent in the management and proceeds of the lands; that both made disbursements on account thereof, and shared in the rents and profits; that it does not appear that Le Grand ever accounted or was ever required or expected to account for moneys received from such lands, or that he was ever repaid for moneys expended thereon, and that as between Le Grand and George no accurate account could be stated as to the rents and profits of said property prior to 1st of March, 1859, when a new method of keeping the accounts was adopted, or as to the amount Le Grand received therefrom.
After the agreement of August, 1852, and on 25th of January, 1853, George entered in the journal of said books of account, a computation of the amount remaining due upon said notes given to Ransford, in 1842, making the amount then due, $5,000, and he and Le Grand on that day, executed and delivered to Ransford, their joint and several bond for that amount, to secure such indebtednes. The trial court found that Le Grand and George, as a firm, prior to the execution of said bond, and after 6th of August, 1852, made payments on said notes, and subsequently on said bond, until the final dissolution of the firm, and thereafter considerable sums were paid thereon by Le Grand, and that George made no payments thereon, individually, until after 31st of October, 1864.
In December, 1869, Ransford commenced an action in the superior court of Buffalo on said bond against Le Grand and George, in which George only was served. The complaint alleged that payments had been made on the *240 bond by the defendants from 18th of August, 1860, to 20th July, 1864, amounting in all to $1,044.39, and by Le Grand from 5th of December, 1864, to 16th of November, 1869, amounting in all to $2,681.56, and that there remained due over $10,000. George appeared in this action and made an offer of judgment for $7,000, besides interest, which was accepted, and judgment was entered accordingly, enforcible against the joint property of the defendants and the separate property of George. The judgment was afterwards paid, partly by George and in part by proceeds of a portion of the “Asa Marvin assets.”
The trial judge also found that during the entire period of the partnership the firm did a general law, real estate and agency business, and up to 6th of August, 1852, acted as real estate agents for Asa and Sarah L. Marvin, as to their property in Buffalo.
The trial court also found that on the 6th of August, 1852, George was vested with the title in fee simple absolute as trustee for and in behalf of Le Grand and himself of all the lands derived from Asa Marvin as aforesaid, except so much thereof as he had sold or otherwise disposed of; that the same were free from incumbrance, except taxes and tax sales that were liens thereon; and that the same were acquired by partnership funds, and that George had nothing else wherewith to acquire them. That finding does not apply to the Mohawk street property, on which George resided.
The latter finding, if correct, disposes of the main issue in the case. It is challenged by the counsel for the moving defendants as being unsupported by the evidence or clearly against its weight. In behalf of that contention, it can be said truly that there are some serious conflicts of testimony, that many of the accounts presented are incomplete, obscure and perplexing, and that there are items of evidence which, taken by themselves, tend with more or less force •against the conclusion of the trial court. But our examination of the case satisfies us that there is evidence which well supports the finding. Portions of such evidence have been already stated.
It is doubtless true, as contended by the moving defendants, that where the title to the lands in question was taken by George in his own name, he w'as prima facie the sole owner, and the burden of proof is on the plaintiff to show the contrary. That burden, we think, has been met, to the extent found by the trial judge. We think it .very clear that the sole reason for the change in the terms of the partnership made in 1842, was the pecuniary embarrassment of Le Grand.
It is equally clear that when that change was made, *241 both parties intended that when such embarrassment should cease, the former terms, or others mutually satisfactory, should be resumed, so that the interest of each party should be the same ultimately, as if the change of 1842 had not been made. This is evidenced by the provision in the agreement of 1842, that George should account to Le Grand for the proceeds of the business, and by the fact that the agreement of 1852, entered into after Le Grand had been relieved from his embarrassment, restored the partners to an equal interest in the real and personal property.
We do not overlook the fact that the provision for equality contained in the second article of that agreement, relates to the real estate “of said parties,” that is, the real estate in which both parties had an interest, not that which was owned exclusively by one. But, if our views of the force of the evidence are correct, Le Grand had an interest in the “Asa Marvin assets,” according to the original intention of the parties, and by the terms of the agreement of 1842, he had the right to require from George an account of such assets. The dealings of the firm with respect to that property, and their mode of keeping accounts with it, are evidence tending in the same direction. There is evidence tending to show that all the payments to Bansford for that property were made by the firm. The account of such payments was kept on the books of the firm. Soon after the agreement of 1852 was made, George entered upon the books of the firm a computation of the amount due upon the notes given to Bansford, in which he describes the note given by himself in August, 1851, for $667.31, as the note of “G. L. M.” and “L. G. M.,” meaning himself and Le Grand; and for the balance of $5,000, shown by that computation, the joint bond of Le Grand and himself was given, as above stated. In short, the extent to which the land was treated in the firm accounts as firm property is a strong circumstance in determining the intent, and tending to show that it was embraced in the agreement of 1852. Fairchild v. Fairchild, 64 N. Y., 471.
The purchase of the Asa Marvin assets was nor foreign to the business of the firm. The finding is, that they did a real estate business; and as prospective heirs of Asa Marvin, each partner was interested, and equally interested, in preventing his real estate from being sold at a sacrifice.
There is reason for holding that the term “ liabilities ” used in the second article of the agreement of 1852, had reference to this debt to Bansford, among others, and that the joint bond was given in pursuance of the provision that *242 the equal interest of each partner recognizable by that article was subject to liabilities. If that contention is correct, it points with certainty to the “Asa Marvin assets” as included in the real estate inventoried in that article.
The third article of the agreement contains a similar expression in reference to the personal property. “The personal property of said parties is now the equal property of said parties,” etc. From such property are excepted the “claims of George L. Marvin” against Tanner. This implies that such claims, but for the exception, would have passed under the general designation of the personal property of said parties. If those claims were a part of, or derived from, “A. M.’s assets,” that clause also demonstrates that those assets were included in the agreement. The case states that the claims were in the shape of judgments that had been obtained against Tanner prior to August, 1852, and had been assigned to George. It does not appear by whom they were assigned nor by whom recovered. It appears that Tanner was the assignee of certain judgments against Asa Marvin. The counsel for the moving defendants argues that, by reason of that fact the claims against Tanner were excepted from the copartnership agreement to enable George to use them in paying the judgments held by Tanner, and hence it is to be inferred that George alone was to pay the claims against “A. M.’s assets,” and consequently was the- sole owner of such assets. But it does not appear what the arrangement with Tanner was, or that whatever it was, it was ever consummated. The-judgments held by Tanner were assigned to him May 26, 1851. He acknowledged satisfaction of them in June following, and on the 8th of July, 1851, they were discharged of record. So that the subsequent revocation of the claims against Tanner in the agreement of 1852 could hardly have been for the purpose of enabling George to use them in paying the Tanner judgments. The case also states that on 7th February, 1852, George executed and acknowledged five- “ partial” releases from nine judgments in matters" where Tanner was a defendant, thus showing that up to that time the judgments against Tanner had not been discharged. What is meant by partial releases is not explained. If there is evidence that those releases were ever delivered, it has escaped our attention; presumably they were not, as they were put in evidence by the defendants, and for aught that appears, were produced by them at the trial. The defendants put in evidence a memorandum made by Le Grand, under date of September 25, 1852, detailing a conversation which he had oh that day with one Miller respecting Tanner and certain judgments which were claims against him. If the judgments referred to are those in. *243 question (and the evidence is of no materiality unless they ah> the same), the memorandum bears evidence that the judgments were not then satisfied of record. The memorandum also contains an intimation that the purpose of the pro1 posed release to Tanner was to make him disinterested as á witness, but in what matter does not appear. The consideration expressed in the “partial ” releases • spoken df was one cent. On the whole, we think the argument of the defendant’s counsel, based upon the exception in the agreement, has no merit, and that the conclusion of the trial court that “A. M.’sassets ” were partnership property is sustained by the evidence.
The defendant’s counsel contends that the arrangement, of which the agreement of 1842 was a part, was in fraud of creditors, and that the plaintiff, who is in privity with lie' Grand Marvin, is in the attitude of asking the court to relieve her from the consequence of his fraud. The object Of the present action is not to compel a restoration or conveyance to Le Grand or his privies of the interest in the partnership assets which he parted with by the agreement of 1842; that interest was restored by the agreement of 1852; all that is sought for here is an accounting in respect to such assets, and an equitable disposition among the partners. The case is the same as if the agreement of 1842 had not been made, and George had been permitted to take title to the property of the firm in his own name for convenience or any other lawful purpose.
The trial court found that upon the question whether the Asa Marvin assets are firm property, the defendants are bound by a prior adjudication. An action was brought in 1871, in the superior court of Buffalo, by George H. Marvin, son of George L., in which Le Grand and George L. were made defendants, but Le Grand only was served, upon a promissory note made by the defendants therein, in June, 1864, for $1,000, payable to their sister, Mary A. Cadwell. Le Grand defended and set up, among other things, that the note was paid “with the property of the defendants, or One of them, or with the proceeds of such last property.” The referee, by whom the cause was tried, found that George paid the note with the proceeds of land in Syracuse, which he held in his own name, but which was in part property of the firm, and upon that ground judgment was rendered in favor of Le Grand against the plaintiff. Subsequently, in a motion made by Le Grand upon notice to George L., it was held by the court that during the pendency of such action George L. was beneficially interested in the recovery sought by the plaintiff therein, and in the prosecution of said action, and on that ground he was adjudged to be liable for the costs thereof. The Syracuse land, with the proceeds *244 of which George L. paid said note, was part of the Asa Marvin assets, acquired in the same way, from the same individual, at the same time and treated by the ñrm and the members thereof in the same manner as the lands in dispute in this action.
Was George L. Marvin, although not a party to the record, bound by that recovery ? The case does not show what agency he had in the conduct of the suit. But it is well settled that the statute (2 Rev. Stat., 619, § 44) applies only where the party in interest is chargeable with having brought the action. It is not enough that had the suit succeeded, the recovery would have been for his exclusive benefit. Whitney v. Cooper, 1 Hill., 629; McHarg v. Donelly, 27 Barb., 100.
In the case first cited, it was said that the bringing of a suit may be by retaining an attorney for the purpose, either alone or in conjunction with others, or recognizing a retainer made by an assumed agent, or actually engaging to defray the expenses of the nominal plaintiff" retaining an attorney in his own name, he alone being liable to the attorney in the first instance. The order charging George L. with costs, having been made upon pofice to him personally, and not having been reversed, it is to be assumed that he was shown to have done something with reference to the suit which was tantamount to bringing it. _ It is well settled that the real parties in interest in an action at law, though they are not the nominal plaintiffs, are, in equity, bound by the judgment, equally as though they had been noniinally parties. Southgate v. Montgomery, 1 Paige, 41. The term “parties,” in the sense of the rule which renders a prior judgment conclusive upon those who sustain that character, is not restricted to those who are parties on the record. It includes all who have a direct interest in the subject matter of the suit, a right to make a defense or control the proceedings. 1 Greenlf. Ev., § 523; Monroe v. Delavan, 26 Barb., 16; Bates v. Stanton, 1 Duer., 79; Village of Port Jervis v. The First National Bank of Port Jervis, 96 N. Y., 550. We think there can be no_ doubt that George L. Marvin was bound by the judgment in that action.
The moving defendants in this action, being in privity • with him, are equally bound.
It is contended, however, in their behalf, that the issue whether the “Asa Marvin assets” were partnership property, was not involved in that action; that the issue was , whether the note was paid, and, if it was, the source and manner of payment were immaterial. As between the defendants and the nominal plaintiff in that action, the position maybe correct. But, as between GeorgeL. Marvin, *245 the plaintiff in interest, by whom the action was brought and for whose benefit it was prosecuted, and the defendant, Le Grand Marvin, the question whether the payment was made with money of the firm was important. And so it seems to have been held by the court of appeals, when the action on the note was before that court on appeal from the first trial. At that trial, evidence offered by Le Grand to show that the Syracuse land was firm property was excluded, and it was held error. Allen, J., said: “The offered evidence was one link in the chain of evidence to show that the joint note had been paid with joint funds, and that there was gross injustice in the attempt of one partner to appropriate the land to his own use, and to repel any equity that might exist had the note been paid wholly from the lands of one.” All the members of the court concurred. The judgment was reversed and the case sent back for a new trial, and, on the second trial, the testimony previously rejected was received, and the refereee found the fact that the payment was made with partnership funds, as above stated. We agree with the learned judge at special term in holding that the moving defendants are concluded in the present action by that adjudication upon the question whether the Asa Marvin assets were partnership property.
The real estate in question being partnership property, is to be treated as personal property for the purpose of paying debts and adjusting the equities between the co-partners, and only what remains is to be regarded as real estate. That consideration answers the several objections made by the moving defendants to the right of the present plaintiff to maintain the action. The right of action passed by transfer from Le Grand to Greenwood and from the latter to his executors as personal estate. It was not affected by the declaration of trust executed by Greenwood to Le Grand, nor is the trust within the statute of uses and trusts, it relating to personal property only.
For the like reason, the widow of George L. is not dow~ able of the lands till the partnership accounts are settled, and then she will be entitled to dower only in her husband’s share of what may remain.
The remaining exceptions in the case have been examined, but they require no comment.
The motion for a new trial should be denied, with costs to be paid by the moving defendants.
Haight and Bradley, JJ., concur.